**Martha Ann WELLS, Petitioner,**

v.

**Ralph N. WALTER, Judge, Morgan Circuit Court, Respondent.**

Court of Appeals of Kentucky.

Oct. 12, 1973.

As Modified Oct. 26, 1973.

Gibson Downing, Stoll, Keenon & Park, Lexington, for petitioner.

Ralph N. Walter, Judge, Morgan Circuit Court, West Liberty, for respondent.

PALMORE, Chief Justice.

Respondent having denied a motion that he vacate the bench in a divorce action brought against petitioner in his court, she brings this original action for prohibition. Cf. Conley v. Stivers, Ky., 445 S.W.2d 439 (1969).

The divorce action was filed by petitioner's husband on August 29, 1973. On the same day respondent issued an order enjoining petitioner from removing her two infant children from the jurisdiction of his court. On the following day, according to petitioner's affidavit, over her objection the husband took custody of the children and is now living with them at the home of his mother, who is an aunt of respondent's wife (the husband being a first cousin of respondent's wife); and on September 3, 1973, when petitioner attempted to pick up one of the children after school she was advised by the principal that he had been served with a court order that prevented her from taking the child and that if she persisted in an effort to do so he had been instructed to report it to the sheriff of Morgan County. The affidavit goes on to state petitioner's belief that because of the familial relationship between the respondent's wife and petitioner's husband and his mother the respondent will not afford her a fair and impartial trial. On the basis of this affidavit and pursuant to KRS 23.230 she moved the respondent on September 5, 1973, to vacate the bench. In due course the motion was denied, precipitating this action.

The response submitted by Judge Walter reflects that although he has no particular desire to participate in the divorce case he is reluctant to vacate his duties and burden the judicial system with the necessity of casting about for special judges whenever it happens that there is a family relationship, especially one through marriage alone, between the regular judge and one

or both of the litigants. He points out that in rural areas this is a frequent circumstance, illustrated by the fact he also is a second cousin once removed (his mother and her grandmother being first cousins) of the petitioner.

Canon 3C(1)(d) of the Code of Judicial Conduct adopted in 1972 by the American Bar Association provides as follows (emphasis added):

"A judge should disqualify himself in a proceeding in which his impartiality might possibly be questioned, including but not limited to, instances where . . . he *or his spouse,* or a person within the third degree of the relationship to either of them, or the spouse of such person . . . is a party to the proceeding. . ."

A first cousin, or cousin-german, is in the second degree of relationship according to the common-law and canon-law and fourth degree according to the civil-law computations. Webster's Third New International Dictionary, p. 482, "consanguinity." Canon 3C (3)(a) provides that for purposes thereof the degree of relationship is calculated according to the civil law system. Nonetheless, we are of the opinion that a first cousin by blood or marriage is of sufficiently close kin to require disqualification.

What this court, speaking through the late Judge Carroll, said in 1917 holds as true today as it did then:

"The judge is not the only one concerned in the just and correct course of justice. Nor, indeed, are the litigants the only ones to be consulted. The public generally have the right to feel that there is no favoritism in the courthouse; that there all men stand equal before the law, and that there justice will be dispensed to all with an even hand. The fact that the judge may be unconscious of any bias, and may be sure that interest or relationship could not dispose him to favor one side or the other, is not enough. The unsuccessful litigant has also the right to know that the decision was the offspring of a fair and impartial mind, and this satisfying assurance he cannot have if there are before his eyes facts or circumstances reasonably sufficient to create the belief that influences outside of the record operated in making the decision."

The same policy was more recently set forth in Dotson v. Burchett, 301 Ky. 28, 190 S.W.2d 697, 700 (1945), as follows:

"It is always delicate and embarrassing where an attorney or client feels that a judge ought not to try his case and is impelled to offer even an informal and off-the-record suggestion of it. The attitude is, of course, greatly magnified when it becomes necessary to offer formal objection and proceed to 'swear him off the bench.' This court appreciates such an embarrassing situation, and we, too, feel a delicacy in the matter. We realize that most judges are of sufficient integrity and sensitiveness to judicial duty and responsibility to rise above and put away conditions which suspicious parties may think will influence or color their decisions. However, there is always the higher consideration that every litigant is entitled to 'nothing less that the cold neutrality of an impartial judge' and should be able to feel that his cause has been tried by a judge who is 'wholly free, disinterested, impartial and independent.' . . . Any doubt of qualification, therefore, should be resolved in favor of a party questioning it, bona fide, and upon grounds having substance and significance."

■■■ This court fully appreciates the respondent's sincerity and is quite familiar, through first-hand experience, with the vexatious inconvenience of providing special judges. Nevertheless, it is a universally recognized tradition of the law that the appearance of impartiality is next in importance only to the fact itself. It cannot be sacrificed to convenience.

Prohibition is granted in accordance with the petition.

PALMORE, C. J., and JONES, MILLI-KEN, OSBORNE, REED, STEPHEN-SON and STEINFELD, JJ., sitting.

All concur.